IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00153-WHA |
| | ) | (WO) |
| | ) | |
| DAVID L. SIMS, WANDA DEESE, | ) | |
| DONAL CAMPBELL and GLADYS | ) | |
| DEESE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc #52) filed by Defendant Gladys Deese ("Deese"). The motion is in response to a Complaint (Doc #1) filed in state court on December 7, 2004, by Plaintiff, Olivia Nelson ("Nelson"), subsequently removed to this court. In addition to Deese, Nelson named David Sims ("Sims") and Donal Campbell ("Campbell") as defendants.

The lawsuit stems from an incident that occurred while Nelson was serving time as an inmate at Julia Tutwiler Prison for Women located in Wetumpka, Alabama. The Complaint alleges that on December 7, 2002, Sims, who was a correctional officer at the prison, forced Nelson to perform oral sex on him. An investigation was conducted, Sims eventually resigned his position at Tutwiler, and criminal charges were brought against him. At the time of the alleged attack, Deese was the warden at Tutwiler and Campbell was the Commissioner of the Alabama Department of Corrections.

Nelson's Complaint asserts the following claims: Assault and Battery against Sims (counts one and two), Negligent Hiring, Training, and Supervision against Deese and Campbell (count three), Intentional Infliction of Emotional Distress against all defendants (count four), and that all defendants violated Nelson's rights under the Eighth Amendment[1] as enforced by 42 U.S.C. § 1983 (count five).

Upon a motion by Nelson, the court issued an order on January 10, 2006, dismissing Campbell from this case with prejudice. Besides Deese, the only remaining defendant is Sims and he has not sought summary judgment. The only claims applicable to Deese are the State tort claims in counts three and four and the § 1983 claim in count five, thus those are the only claims considered in this Memorandum Opinion.

For the reasons to be discussed, Motion for Summary Judgment is due to be GRANTED in part and DENIED in part as moot.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

[1] Nelson's Complaint says that she was deprived of "her right under the Eighth and Fourteenth Amendments to the Constitution...." Pl's Complaint ¶ 14. Because Nelson makes no effort to argue due process or equal protection issues, the court assumes that Nelson meant to bring an eighth amendment claim as incorporated by the fourteenth amendment. In the alternative, if Nelson did intend to bring a fourteenth amendment claim against defendant Deese, she has abandoned that claim by not arguing it in her response brief.

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. FACTS

The submissions of the parties establish the following facts construed in a light most favorable to the non-movant, in this case Plaintiff Nelson:

3

Following a domestic violence conviction, Nelson was incarcerated at Julia Tutwiler Prison for Women from June 2002 until December 2003. When she arrived, Sims had already been employed as a State Correctional Officer since September, 1999 and had been assigned to Tutwiler since November, 1999. Prior to his arrival at Tutwiler, Sims received certification from the Alabama Peace Officers Standards and Training Commission (APOSTC) and received training in such areas as: use of force, inmate rights, cross-gender supervision, human and race relations, inmate behavior, sexual harassment, and the relationship between officers and inmates. While employed at Tutwiler, Sims received an additional forty hours of advanced training in sexual harassment, cross gender supervision, ethics and inmate con games.

Deese became the warden at Tutwiler in 2001 and retired from that position in October, 2005. Prior to becoming the warden, Deese served as the deputy warden and also as an instructor for future correctional officers as the correctional officer training academy. At all times relevant to this case, Deese was the warden at Tutwiler.

Nelson claims, and the court accepts for purposes of this motion, that soon after she arrived at Tutwiler Sims began to harass her and make inappropriate sexual suggestions and comments. She states that on at least two occasions he grabbed her crotch and another time came to her cell and asked her to expose herself to him while he suggestively stuck his tongue out at her. She did not report these incidents to any prison officials.

On December 7, 2002, Nelson was assigned to work in the prison chapel. Sims was not assigned to the chapel, but escorted another inmate to see the Chaplain for counseling. When Sims arrived, Nelson went to the bathroom. While she was in the bathroom, Sims unlocked the door and forced her to perform oral sex on him. Sims then threatened to kill Nelson if she told

4

anyone. After the incident, Nelson returned to her cell and told fellow inmate, Kim Edwards what had happened. She told no prison official about the incident until December 29.

On December 29, 2002, Nelson was confronted by Correction Officer Manual about rumors that Nelson had performed oral sex on Sims. Nelson confirmed that the rumors were true and told Manual what had happened. Manual took Nelson to see Sergeant Carter (Manual's supervisor), and Nelson was directed to write a statement detailing all of her interactions with Sims. Deese was informed about what happened and on the morning of December 30, 2002, after reading Nelson's account, instructed the Department of Corrections investigative division to look into Nelson's allegations. Deese also instructed Carter to place Nelson in protective custody.

After ordering the investigation, on the afternoon of December 30, Deese summoned Sims to her office and confronted him with Nelson's accusation. He confessed that he had oral sex with Nelson, but told Deese that it was consensual. Deese informed Sims that she would recommend that his employment as a Correctional Officer be terminated and that he was entitled to a pre-dismissal conference. Sims waived that right and tendered his resignation, which Deese accepted.[2]

## IV. DISCUSSION

---

[2] Following his resignation Sims was referred to the Elmore County District Attorney for criminal prosecution. Criminal charges were brought and Sims eventually pled guilty to one count of Sodomy.

Nelson has sued Deese for damages claiming that Deese is liable for Eighth Amendment violations committed against Nelson by Deese's subordinate, David Sims. Deese first claims that as a supervisory official she is not liable under § 1983 for the unconstitutional act of her subordinate on the basis of respondeat superior or vicarious liability. Alternatively, she argues that even if she could be held liable she is protected by qualified immunity.

**A. Official Capacity**

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States. 42 U.S.C. § 1983. Officials acting in their official capacity are not considered "persons" within the meaning of § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 65 (1989). Additionally, "…a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office…As such it is no different than a suit against the state itself." Id. at 71. Where a party attempts to sue a state in federal court, the Eleventh Amendment prohibits the federal court from exercising jurisdiction over the suit, except where the State has consented to be sued or waived its immunity, or where Congress has overridden the State's immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984); Quern v. Jordan, 440 U.S. 332, 341 (1979). Neither of those exceptions applies here and Deese in her official capacity as warden is immune from suit under the Eleventh Amendment. Summary Judgment is due to be granted as to Nelson's claim against Deese in her official capacity for money damages under § 1983.[3]

Section 1983 does not prevent Nelson from suing Deese in her individual capacity.

---

[3] No prospective injunctive relief is claimed, nor would be appropriate.

6

## B. Eighth Amendment Jurisprudence

"Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones." Farrow v. West, 320 F.3d 1235, 1242 (11th Cir.2003) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The treatment a prisoner receives in prison, along with the conditions under which the prisoner is confined, is governed by the Eighth Amendment, which prohibits cruel and unusual punishment. Miller v. King, 384 F.3d 1248, 1260 (11th Cir. 2004) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993)). Actions that bring about the unnecessary and wanton infliction of pain constitute cruel and unusual punishment for the purposes of the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002); Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

To establish an Eighth Amendment claim, a plaintiff must satisfy two requirements. First, the plaintiff must show that the defendant's conduct is objectively serious or caused an objectively serious injury to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the plaintiff must show that the prison official acted with a "sufficien[tly] culpable state of mind," or with deliberate indifference to or reckless disregard for the plaintiff's constitutional rights, health, or safety. Id. at 837 (a prison official may be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Under the objective prong, "[a] prison official's conduct is 'objectively serious' under the Eighth Amendment if it is incompatible with 'contemporary standards of decency.'" Hammond

v. Gordon County, 316 F. Supp 2d 1262, 1282 (N.D.Ga. 2002) (quoting Carrigan v. Davis, 70 F. Supp. 2d 448, 452 (D.D.C. 1999) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993))).

The subjective prong requires that a prison official must act with "'a sufficiently culpable state of mind,'" or with deliberate indifference to a substantial risk of serious harm to an inmate. Farmer, 511 U.S. at 825 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). A prison official acts with a sufficiently culpable state of mind where the prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "If no legitimate law enforcement purpose or penological purpose can be inferred from the officer's conduct, the conduct itself can be sufficient evidence of a culpable mind." Hammond, 316 F.Supp.2d at 1282 (citing Carrigan, 70 F. Supp. 2d at 454) (citing Boddie v. Schnieder, 105 F.3d 857, 861 (2nd Cir.1997).

In the instant case, the court is mindful of the fact that Sims has not moved for summary judgment and Deese has not attempted to refute the evidence before the court that Sims did indeed sexually assault Nelson. For the purposes of summary judgment, the court will assume, without deciding, that Sims's actions satisfy both prongs set forth above and that his actions brought wanton and unnecessary pain, violated the standards of contemporary society, and served absolutely no legitimate penological purpose. See Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (in supervisory liability case court assumed without deciding that conduct of law enforcement agents on the scene violated Fourth Amendment right to be free of unreasonable search and seizure). Therefore, it is established, for the purposes of deciding Deese's summary judgment motion, that Nelson's Eighth Amendment right against cruel and unusual punishment was violated when she was sexually assaulted by Sims. See Farmer, 511 U.S. at 834 ("Being

8

violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal citation omitted); see also Boddie 105 F.3d at 861 (prisoner's allegations of sexual abuse by a corrections officer may state a cognizable claim under § 1983); Carrigan, 70 F.Supp.2d at 454 (sexual intercourse between an officer and inmate constituted a per se Eighth Amendment violation).

**C. Supervisory Liability**

Although it is established that Nelson had her Eighth Amendment rights violated, that does not necessarily mean that Deese is liable. Deese argues that Nelson cannot use the doctrine of respondeat superior to hold her liable in a § 1983 lawsuit for Sims's unconstitutional actions. According to the Eleventh Circuit, "supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotations omitted). Rather, "[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990) (citations omitted). A causal connection may be established: (1) when "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) when "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or (3) when "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003) (internal punctuation, quotation marks, and citations omitted). "The

standard by which a [prison] supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Id.

Nelson does not contend that Deese personally participated in the sexual assault or that Sims was following specific direction from Deese to sexually assault prisoners. Nelson instead attempts to establish liability through a causal connection between Deese's actions, or more appropriately inactions, and the constitutional deprivation committed by Sims.

Nelson does not submit evidence that there was a history of widespread sexual abuse of prisoners by Sims, or by other guards, that would have put Deese on notice of the need to make corrections. See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990) (explaining that plaintiff must show that the past abuses were "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences").

In her complaint and reply brief, Nelson alludes to the case of Laube v. Hailey, 234 F.Supp. 2d 1227 (M.D. Ala. 2002), which found that Tutwiler was overcrowded and inadequately staffed. Complaint ¶ 16; Pl's Reply Br. at 8. Laube did not address officer-on-inmate sexual abuse and Nelson never presents a coherent argument as to why the findings in Laube would be relevant in the instant case.

Nelson also does not show that one of Deese's customs or policies resulted in deliberate indifference to constitutional rights within Tutwiler. The only policy concern cited by Nelson was that there was no policy against correctional officers being alone with female inmates.[4] Nelson does not dispute Deese's claim that allowing individual corrections officers to be alone

---

[4] Nelson argues not just that male correctional officers should not be left alone with female inmates, but that all correctional officers should not be left alone with inmates.

10

with inmates is an Alabama Department of Corrections policy, and not a particular policy instituted by Deese. The court also notes that while this assault occurred when Sims was alone with Nelson, that situation was created when Sims deviated from his duties and forced himself inside the bathroom with Nelson, and that type of action is not a "supervisor's policy or custom" that would show a causal connection.

Finally, Nelson does not present evidence that Deese directed Sims and other guards to act unlawfully, but does claim that Deese knew that her subordinate, Sims, would act unlawfully and failed to stop him. The question then is whether the facts and circumstances presented could support an inference by a reasonable jury that Deese knew that Sims would act unlawfully and then did nothing to stop him. The answer to this question is no, and for that reason Deese is due to be granted summary judgment.

Nelson contends that Deese knew Sims was a sexual predator and did nothing to stop him, but she has not submitted sufficient evidence to support this contention. She offers that Sims was caught bringing a women's makeup compact and a condom into the prison. On January 9, 2002, during a routine personal property search of all employees entering the prison for work, Sims was caught with the above mentioned contraband. He told Lieutenant Leo Allen that the compact belonged to his wife and he had placed it in his pocket with the intention of giving it back to her later. He explained that the condom was for use when he "goes out." The contraband was confiscated and Sims was warned "that similar acts in the future could result in disciplinary action." A report of the incident was generated, which was viewed by Deese on January 14, 2002. Deese noted on the report that "some type of action SI/Warning should be

11

initiated", which apparently did occur when Sims was warned that future disciplinary action would result if he was caught with contraband again.

Nelson has also produced an affidavit from Bernice Lewis, who was employed as a communication officer at Tutwiler from 1998 until 2005. Lewis states in an affidavit that Deese was aware that Sims was engaging in sexual misconduct with inmates because Lewis reported to Deese that Sims was using contraband such as cosmetics to bribe inmates for sex. See Pl.'s Ex. 6. Following the pretrial hearing in this case, Nelson's counsel confirmed the court's understanding that this referred to the January 9 incident.

Finally, Nelson claims in her affidavit: (1) that she saw Sims bribe inmate Jackie Jones with makeup in return for sex; (2) that fellow inmate Betty Shipp told Nelson that Sims had gotten her (Shipp) pregnant; (3) that unnamed guards at the prison told Nelson that Shipp had been sent to have an abortion; and (4) that another guard, Officer Eldridge, had fathered a child with Nelson's fellow inmate Shulawn Gray. In addition to hearsay problems with (2), (3), and (4), Nelson does not say that Deese had any knowledge of any of this. These statements cannot support Nelson's claim.

Nelson also makes the conclusory statement that "Warden Deese was aware of the sexual misconduct by officers, because she was kept informed." She does not specify Sims or say when and by whom Deese was told, or what she was told. When applying the summary judgment standard, "conclusory allegations without specific supporting facts have no probative value." U.S. v. Trainor, 376 F.3d 1325, 1334 n.5 (11th Cir. 2004), quoting Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985). This statement cannot be considered in support of Nelson's claim.

12

Nelson's remaining evidence, Sims's possession of contraband on January 9, 2002, and the affidavit of Bernice Lewis referring to that incident, however, will be considered and viewed in a light most favorable to the non-movant, Nelson. Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 2003). Even viewed through that favorable lens, Nelson is unable to show that Deese should be held liable for Sims's constitutional violation under a supervisory liability theory. Based on the evidence submitted, Deese had no way of knowing that Sims, or any other guard, would sexually assault a prisoner. Once Sims was caught with the compact and condom, Deese was forced to deal with conflicting stories. Sims, who had no disciplinary record, provided the plausible explanation that the compact belonged to his wife and that the condom was for use when he "goes out." In her affidavit, Bernice Lewis states that she informed Deese that Sims was using cosmetics to bribe inmates for sex, but that was referring to her report of the January 9 incident, nearly eleven months before Nelson as assaulted. No evidence was offered of any report to Deese after that and before the assault. Based on the information Deese had, it is not possible for Nelson to establish the "causal connection" necessary to establish supervisory liability. Cottone, 326 F.3d at 1360.

First, Deese cannot be said to have had knowledge that Sims would act unlawfully.[5] Id. Besides knowing that Sims was caught bringing contraband into the prison on one occasion, the only additional knowledge Deese had was conflicting statements about why Sims brought contraband into the prison. On the one hand she had Sims's seemingly innocent explanation that it was an oversight, and on the other was Lewis's conclusory statement that Sims was attempting

---

[5] This case is unique in that Nelson, through Lewis's affidavit, alleges that Deese knew that Sims was participating in illegal activity (solicitation of prostitution) that turned out to be different from the actual illegal activity conducted by Sims (sexual assault).

to solicit sex. Neither position allows the court to conclude that Deese knew with any certainty that Sims was engaged in illegal activity, much less that he was a sexual predator and would engage in sexual assault in the future.

Additionally, Nelson does not show that Deese "failed to stop" Sims from acting illegally. This is not a case where Deese turned a blind eye to unlawful conduct. Deese did recommend a warning when Sims was caught with contraband. Nelson contends that Deese should have done more, up to immediately terminating Sims's employment when he was caught with contraband, but does not provide any evidence to show how Deese's conduct was anything but reasonable under the circumstances. The facts presented show that Deese exercised her discretion in dealing with Sims, and acted in accordance with what she knew at the time. Without more substantial proof to go on, she could not conclude that Sims was involved in illegal conduct, or that he required anything more than a warning.

In sum, Nelson fails to meet the "extremely rigorous" standard of supervisory liability established in the Eleventh Circuit. Id. Because a reasonable jury could not find a causal connection between Deese's conduct as the warden and the sexual assault on Nelson by Sims, summary judgment for Deese is due to be granted on Nelson's Eight Amendment claim, as enforced though § 1983. There is no need to address Deese's claim of qualified immunity.

### D. State Law Claims

The remaining claims against Deese are state law tort claims of Negligent Hiring, Training and Supervision and Intentional Infliction of Emotional Distress. These claims are best handled by the state courts. Under 28 U.S.C. § 1367(c)(3), this court may decline to exercise jurisdiction over state law claims when it has dismissed all claims over which it has original

jurisdiction. Having dismissed the § 1983 claim against Deese, the court chooses to decline the exercise of supplemental jurisdiction over the remaining state law claims against her. Furthermore, even though the court still has jurisdiction of the federal claim against Defendant Sims, the court finds that the state law claims against Deese involve her liability as a supervisor under state law, as distinguished from the state law claims brought against Sims, and the court declines to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c)(1) and (4).

## V. ORDER

For the reasons discussed above, it is hereby ORDERED as follows:

1. Defendant Deese's Motion for Summary Judgment (Doc #52) is GRANTED with respect to Plaintiff Nelson's Eighth Amendment claim against Defendant Gladys Deese, and that claim is DISMISSED with prejudice.

2. Plaintiff Nelson's state law tort claims against Defendant Gladys Deese for Negligent Hiring, Training and Supervision and for Intentional Infliction of Emotional Distress are DISMISSED without prejudice.[6]  Deese's Motion for Summary Judgment as to these claims is DENIED as moot.

3. This case shall proceed to trial against the Defendant David L. Sims.

Done this 24th day of March, 2006.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] The period of limitations for these state law claims shall be tolled for a period of 30 days after they are dismissed, unless Alabama law provides for a longer tolling period.  See 28 U.S.C. § 1367(d).

15